Renaldi *v.* Buenning et al., Appellants.

Argued March 14, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Edward J. Fox, Jr.,* of *Fox and Fox,* for appellant.

*Leighton R. Scott* of *Hogan and Scott,* for appellee.

Opinion by Cunningham, J., July 13, 1934:

Treasa Renaldi, the widow of Frank Renaldi, and claimant in this compensation case, sought an award upon the ground that the death of her husband resulted from an injury—a hernia—accidentally suffered in the course of his employment as a laborer in his employers' greenhouse.

The defense was that the evidence in her behalf did not bring the case within the provisions of the further amendment of April 13, 1927, P. L. 186, to Section 306 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, requiring proof of certain "manifestations" of the precipitation of a hernia, and proof that notice thereof had been communicated to the employer, or his representative, within forty-eight hours after the occurrence.

Specifically, the employers and their insurance carrier contended there was not sufficient proof that the hernia was immediately precipitated by a "severe strain," or of "actual pain in the hernial region," or that notice was given within the time limited.

The compensation authorities made an award upon which the court below entered the judgment now appealed from by the defendants.

Under the questions involved, a summary of the evidence is essential to their proper disposition. The time of the occurrence was the afternoon of Friday, September 30, 1932, and the employe's death, following an operation for double inguinal hernia, occurred October 14, 1932. There was testimnoy by Dr. Anthony Sparto, his family physician, that two months prior to the alleged injury he gave Renaldi a thorough physical examination and found the condition of his right and left inguinal regions perfectly normal.

Decedent was fifty-six years of age and had been employed by the same employers for many years. Henry Buenning, one of his employers, testified that on Friday afternoon Renaldi told him "he had slipped and felt sick and had a tight stomach." The witness added that he did not attribute any importance to the statement, because the walks in the greenhouses are slippery and slipping upon them was almost a daily occurrence. Renaldi continued at light work the remainder of the day and also on Saturday, October 1st.

Referring to Monday forenoon, October 3d, Mr. Buenning testified: "He [Renaldi] came to me where I was working in the greenhouse and he was sick and downfallen, depressed, and he said he had something to tell me, much he didn't like to tell me. So he took down his trousers and showed me a truss he wore." As a Sunday had intervened, this notice was timely, as ruled by us in Mulligan v. E. Keeler Co., 112 Pa. Superior Ct. 261, 170 A. 311, and it is unnecessary to repeat what was there said.

Upon the other branch of the case, there was evidence by Dr. Sparto that Renaldi called at his office on Saturday evening, October 1st, when, upon examination, he found a "right direct inguinal hernia," but was unable to detect a hernia on the left side; that, in the opinion of the witness, the hernia on the right side was of recent and traumatic origin; and that he advised an operation, or at least the wearing of a truss. Henry W. Buenning testified he took Renaldi to Dr. Clayton P. Struthers, the physician selected by the employers to attend their employes, on Tuesday, October 4th. Dr. Struthers stated he found a "double inguinal hernia—one on each side"; that he was not able to determine merely from examination whether they were of traumatic origin, but "considering the history [he] would say it was." He also advised an operation.

On the following Saturday, Renaldi returned to the office of Dr. Sparto to make arrangements for an operation and was referred to Dr. Paul Correll, who operated on October 10th. There was competent evidence that Renaldi, while lifting boxes from one shelf to another in the greenhouse, slipped and immediately felt what he described as a "slipping pain." Dr. Correll operated upon both hernias. After stating that the one on the right side was larger than the other, he expressed the opinion that "the right side was an increased sac and that there had been a new stretching of the structural parts"; and that he was of opinion, at the time of operation, that it "showed sufficient to be classed as traumatic hernia." As to the hernia on the left side, he thought it "might have been a congenital condition."

Upon the question whether death resulted from the injury, Dr. Correll testified: "The assumption is that the man might not have died had he not had an operation. We must figure the operation had something

to do with the death. The operation was undertaken for the radical cure of the two hernias and following that operation he developed a thrombosis, a coronary thrombosis, which is simply a closure of the coronary vessels which feed the musculature of the heart so that in an indirect way if he hadn't had the hernias he wouldn't have had the operation and without the operation might have lived or died. I can't tell." The sufficiency of this evidence of a causal connection between the injury and death is not questioned by appellants. Adopting the view most favorable to them, namely, that the injury merely aggravated the hernia on the right side, it would still be a compensable injury: Zionek v. Glen Alden Coal Co., 105 Pa. Superior Ct. 189, 160 A. 154.

The contention of appellants that the proof in this case did not sufficiently show that the hernia was "immediately" precipitated by the strain incident to slipping on the walk, and was "immediately noticed" by Renaldi, is ruled against them in Sussick v. Glen Alden Coal Co., 108 Pa. Superior Ct. 593, 165 A. 658.

Upon an examination of the entire record, we are satisfied that the controlling facts were established by sufficient legally competent evidence and that the court below correctly applied the law to those facts.

Judgment affirmed.